Michael D. Collins (State Bar No. 166319)
michael.collins@fordlawfirm.com
William H. Ford, III (State Bar No. 52382)
william.ford@fordlawfirm.com
**COLLINS | FORD, LLP**
21900 Burbank Blvd., Third Floor
Woodland Hills, CA 91367
Telephone: (818) 343-2648

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINANIAN DEVELOPMENT, INC. a California corporation, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| ADMIRAL INSURANCE COMPANY, a Delaware corporation, | |
| Defendant. | |

## NATURE OF THE ACTION

1. Plaintiff Sinanian Development, Inc. ("SDI"), is a California general contractor facing a multi-million dollar property damage claim arising from alleged defective construction of a professional medical building in the City of Glendale (the "Claim").

2. SDI, by payment of substantial premiums, purchased liability insurance coverage in the event of such a Claim under a $21M tower of liability insurance coverages structured as follows: (a) a primary policy issued by Scottsdale Insurance Company ("Scottsdale") providing limits of $1 Million per occurrence, $2

1  Million aggregate, (b) a first excess liability policy issued by defendant Admiral
2  Insurance Company providing $10 Million in excess of Scottsdale's $ 1 Million,
3  followed by (c) a second excess liability policy issued by Crum & Forster in excess
4  of $11 million.  This tower provides SDI coverage for the period from July 25, 2020
5  through July 25, 2024.

6      3.    Scottsdale agreed to provide a defense to SDI against the Claim.  The
7  claimant, Glendale Professional Medical Building, LLC ("Glendale Medical") has
8  set forth in detail its claim against SDI; as alleged, the Claim implicates SDI's
9  potential exposure as in excess of $14 Million. However, Glendale Medical recently
10 issued a settlement demand in the amount of $11M.

11     4.    In response, Scottsdale tendered its full $1 Million per occurrence
12 limits towards settling Glendale Medical's demand. However, Admiral asserts it has
13 no duty to defend or to even participate in settlement negotiations, claiming there is
14 "other insurance" potentially available to SDI as an additional insured through its
15 subcontractors. Admiral further contends that the underlying defect Claim involves
16 multiple "occurrences" over a period of time, requiring exhaustion of all the
17 successive primary policies issued by Scottsdale. Stated variously, Admiral
18 contends that SDI is contractually obligated to first horizontally exhaust all
19 potentially available primary insurance policies before Admiral's policy attaches.

20     5.    SDI seeks declaratory judgment and relief, pursuant to 28 U.S.C.A. §§
21 2201 and 2202, regarding the respective rights and obligations of Admiral, on the
22 one hand, and SDI, on the other  in connection with the underlying construction
23 defect Claim. As set out more fully below, SDI seeks  judicial determinations that:
24 (a) when faced with a settlement demand in excess of Scottsdale's "controlling
25 underlying policy" SDI is not required to *exhaust* all potentially available "other
26 insurance" before Admiral's policy attaches (*i.e.,* is "triggered") by the settlement
27 demand; and (b) when a demand is in excess of the per occurrence limits of
28 Scottsdale's policy, Admiral has affirmative legal duties to engage in good faith

Complaint           2           Case No.: TBD

1. settlement negotiations and, when faced with a reasonable settlement demand within its policy limits, to settle Glendale Medical's Claim.

6. The California Supreme Court in a relatively recent case, *Montrose Chemical Corp. v. Superior Court* (2020) 9 Cal.5th 215 ("*Montrose III*"), made plain that California insurance law entitles an insured to call on its excess insurers to participate in settlement once the insured's controlling underlying primary insurance has been effectively exhausted.

7. Admiral has failed or refused and continues to fail or refuse to honor *Montrose III*.

8. It is well established under California insurance law that "Any insurer, whether excess or primary in conducting settlement negotiations, is subject to an implied duty of good faith and fair dealing which requires it to consider the interests of the insured equally with its own and evaluate settlement proposals as though it alone carried the entire risk of loss. [citations omitted]. Such duty carries with it an obligation to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of any settlement demand." *Diamond Heights Homeowners Assn. v. National Ins. Co.* (1991) 227 Cal. App. 3d 563, 576 [citations omitted].

9. Admiral has failed or refused and continues to fail or refuse to honor *Diamond Heights*.

10. Based on well-grounded law, including as alleged above, SDI seeks declaratory judgment and relief, pursuant to 28 U.S.C.A. §§ 2201 and 2202, regarding the rights and obligations of its excess insurer Admiral Insurance Company ("Admiral") in connection with Glendale Medical's construction defect claim.

## THE PARTIES

10. Plaintiff, Sinanian Development, Inc. is a California corporation ("SDI").

11. Defendant, Admiral Insurance Company is a Delaware corporation with its principal place of business in New Jersey ("Admiral").

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this declaratory judgment action pursuant to 28 U.S.C. §§ 1332(a)(1), 2201(a) and 2202. Plaintiff and Defendants are diverse in citizenship and the amount the controversy exceeds $75,000. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because a substantial part of the events and omissions giving rise to this claim occurred in this district and the underlying lawsuit is pending in this district.

## FACTUAL ALLEGATIONS

**A.  Brief summary of Glendale Medical's Claim**

13. On or about May 3, 2017, Glendale Medical Professional Building, LLC ("Glendale Medical") and SDI entered into a written agreement titled "AIA Document A102 – 2007, Standard Form of Agreement Between Owner and Contractor" wherein the Owner engaged the SDI to provide all labor, materials, equipment, and services necessary to construct a 4-story medical office building, along with a subterranean parking lot, and appurtenant structures associated therewith (hereinafter, the "Project"), as more fully set forth in said agreement for the sum of $13,658,000 (hereinafter, the "Prime Contract").

14. Before completion of the Project, Glendale Medical commenced advertising portions of the Property for lease.

15. Glendale Medical alleges that shortly after taking possession of the Project, it began to suspect there were substantial issues relating to the construction of the building.

16. Glendale Medical further alleges that after any significant rain event, the entire building is subjected to various levels of water intrusion (i.e., from the top

floor all the way down to the underground parking) and in more than one instance, the first floor of the building (a medical space) was completely flooded.

17. Glendale Medical alleges that as a result, it has been forced to hire attorneys and forensic experts to determine the origins of the water intrusion, and the scope and cost of potential repairs.

18. Glendale Medical alleges forensic construction experts have conducted extensive inspections which included limited destructive testing that have revealed numerous defects in the construction of the Project which are leading to property damage.

19. Glendale Medical alleges in part the following defects and resulting property damage:

    a. Defective fenestration installation allowing water intrusion to the interior through integration with the building's envelope causing property damage to interior structural components and loss of use of storage units resulting in lost revenue.

    b. Defective installation of door thresholds with reverse slope into the interior, causing ponding and pooling of water which cause accumulated water to enter the building when the door is opened, and direct undue amounts of water through the door seals.

    c. Defective installation of exterior wall cladding systems allowing water intrusion into the interior and through the building envelope causing accelerated degradation of building components, micro-bacterial growth, and loss of use.

    d. Defective installation of utility penetrations that lack WRB (water resistant barrier) and cladding seal, resulting in water intrusion through cladding penetration, into the building interior through absorbent wall substrate.

    e. Defective installation of tile cladding that lacks required weep

screed / wick break terminated at specified height above finished floor / grade resulting in failure to properly terminate cladding with a functional weep at the required height above a horizontal surface results in water intrusion by way of overwhelming the WRB design and accessing potential discontinuities in the building envelope.

   f. Defective installation of stucco cladding at balcony walls which terminates below code required height above deck resulting in water accumulation in cladding from lack of weep / wick breaks resulting in the building envelope becoming overwhelmed and letting in water;

   g. Defective installation of the tile cladding drainage plane causing water to become entrapped causing efflorescence bleed out of setting mortar, that enters the building through discontinuous WRB application and termination detailing;

   h. Defective installation of tile cladding causing it to lack full embedment of tile into setting bed and resulting in pockets of water absorbed into cementitious layers like a battery and fully saturate with moisture causing accelerated degradation.

   i. Abandoned scaffolding ties in vertical above grade walls lack watertight detailing allowing water intrusion through abandoned scaffolding ties causes accelerated degradation to building structural components, interior components, wall sheathing.

   j. Defective installation of grade and below grade waterproofing resulting in bulk water intrusion into the interior of parking garage.

   k. Defective integration between entire perimeter of roof and wall WRB.  Termination resulting in water leaking from the roof elevation will often affect all levels of a building from top to bottom causing building component damage and loss of use.

   l. Defective installation of podium deck resulting in water intrusion

resulting from lack of watertight performance causing long term corrosion of reinforcing steel creating spalling in concrete substrates.

20. On August 15, 2023, Glendale Medical presented a written arbitration demand asserting causes of action against SDI for: (1) Breach of Contract, (2) Negligence, (3) Breach of Express Warranty, (4) Breach of Implied Warranty, (5) Negligent Misrepresentation, (6) Express Warranty, and (7) Equitable Indemnity.

21. Glendale Medical alleges further that estimates of the cost to repair known defects (identified above) are expected to exceed $6,945,000 and will take 18 months to complete.

22. In addition, to date, Glendale Medical alleges it has suffered compensatory damages in excess of $7,500,000 in loss of use and impaired value to the building.

23. In total Glendale Medical alleges it has suffered damages in excess of $14,000,000.

24. On December 8, 2023, Glendale Medical issued its settlement demand pursuant to California Code of Civil Procedure § 999 to SDI and its insurers providing for Glendale Medical's release all claims arising from the Project in exchange for payment of $11,000,000, an amount within the per occurrence limits of the applicable Scottsdale and Admiral policies.

**B.    Brief summary of the Scottsdale policy**

25. Scottsdale provides SDI with liability coverage with $1 Million per occurrence limit and $2 Million aggregate limit for products-completed operations for each policy year. The Scottsdale policies are based on a standard ISO form CG 00 01 04 013 ("ISO" refers to Insurance Services Organization which provides standardized insurance language and forms to the insurance industry).

26. In relevant part, under its policies, Scottsdale promises to pay those sums that SDI becomes legally obligated to pay as damages because of "property damage." The policy requires: (1) the "property damage" to be caused by an

1  "occurrence" and (2) the "property damage" to occur during the policy period.

2      27.    In relevant part, Scottsdale's policies states that "property damage" will be deemed to have been known to have occurred when SDI receives written or verbal demand for damages or other becomes aware by any other means that "property damage" occurred.

    28.    The Scottsdale policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

    29.    The policies define "property damage" to mean, in relevant part, "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured."

    **C.**    **Brief summary of the Admiral policy**

    30.    Admiral provides SDI with excess liability coverage with $10 Million in excess of Scottsdale's $1 Million per occurrence limit and $2 Million aggregate limit for products-completed operations, for each policy year. The Admiral policies are based on a standard ISO form CX 00 01 04 013.

    31.    In relevant part, under its policies, Admiral promises to pay the "'ultimate net loss' in excess of the 'retained limit' because of 'injury or damage.'"

    32.    In relevant part, the Admiral policies provide that Admiral "will have the right and duty to defend" SDI "when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such 'controlling underlying insurance.'"

    33.    In relevant part, the Admiral policies provide the following definitions:

    (a)    "'Controlling underlying insurance' means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance."

    (b)    "'Ultimate net loss' means the total sum . . . that the insured becomes legally obligated to pay as damages by reason of settlement,

judgment or binding arbitration."

(c) "'Retained limit' means the available limits of 'controlling underlying insurance' applicable to the claim."

(d) "'injury of damage' means any injury or damage, covered in the applicable 'controlling underlying insurance arising from an 'event.'"

(e) "'Event' means an occurrence . . . to which the applicable 'controlling underlying insurance' applies."

34. Finally, the Admiral policies contain the following "other insurance provision:

**8. Other Insurance** [¶] **a.** This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part. [¶] When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers. [¶] **b.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of: [¶] **(1)** The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and [¶] **(2)** The total of all deductible and self-insured amounts under all that other insurance.

D. **Summary of SDI's tender to Scottsdale and Admiral**

35. On or about February 2, 2023, Glendale Medical wrote to SDI alleging it had been experiencing water intrusion in various locations of the medical building in various locations over the past two years since SDI's completion of the building and demanding immediate action, including but not limited to giving notice of its claim to SDI's insurers, retaining forensic experts to investigate the cause of the

water intrusion and taking steps to rectify or correct the problem.

36. SDI tendered Glendale Medical's claim to Scottsdale who agreed to retain defense counsel to investigate and evaluate Glendale Medical's claim subject to a reservation of rights.

37. Following Scottsdale's defense counsel's investigation and evaluation, SDI learned that its liability exposure to the Claim greatly exceeded Scottsdale's policy limits and on or about July 24, 2023, SDI's coverage counsel tendered notice of Glendale Medical's claim to Admiral which included Scottsdale's ROR and contact information for retained defense counsel.

38. On August 3, 2023, Admiral acknowledged in writing receipt of notice of the Claim. There was no further communication to SDI from Admiral.

39. On September 14, 2023, coverage counsel for SDI wrote to Admiral advising that SDI had sufficient information to confirm that the magnitude of SDI's exposure significantly exceeded Scottsdale's primary limits and in support included retained defense counsel's (1) Litigation Development Plan, (2) Preliminary Scope of Repair Summary, (3) Preliminary Defect Report and (4) Preliminary Defect Cost Summary. Defense counsel's estimated range of repair costs exceeded Scottsdale's limits by a factor more than 4, making it clear that Scottsdale's policy would be effectively exhausted for purposes of any settlement discussions.

40. Not receiving any response from Admiral, on September 25, 2023 SDI's coverage counsel again wrote to Admiral to provide it with retained defense counsel's updated "Litigation Development Report – Construction Defect" in anticipation of a scheduled mediation with Glendale Medical. The letter explained that the then current damage estimate had been revised upward to over $10,000,000.

41. Admiral has failed or refused to participate actively in settlement negotiations.

42. On October 30, 2023, Glendale Medical issued its initial $11 Million settlement demand which listed and detailed the alleged defects and quantified its

1   total damages at $14,645,000. Scottsdale's retained defense counsel immediately
2   forwarded the demand letter to Admiral.
3       43.    On November 2, 2023, Admiral's coverage counsel wrote to
4   Scottsdale's coverage claiming that "Admiral only recently received notice of these
5   claims and that Admiral was "still investigating the liability and coverage issues."
6   Admiral also took the position that because it believed Glendale Medical's claim
7   involved multiple "occurrences" and that because there had been tenders to
8   subcontractor insurers under which SDI would be additional insureds, it was
9   Scottsdale's responsibility alone to respond to Glendale Medical's settlement
10  demand.
11      44.    On November 8, 2023, Scottsdale's coverage counsel responded to
12  Admiral's November 2, 2023 letter refuting Admiral's position that Glendale
13  Medical's claim did not trigger Admiral's policy limits.
14      45.    On November 10, 2023, Admiral issued its first ROR letter to SDI's
15  coverage counsel to advise that Admiral was "not obligated to provide its
16  determination of coverage until it is given notice that the underlying limits or
17  insurance and/or self-insurance are in imminent peril of exhaustion.
18      46.    Admiral's November 10, 2023 letter further asserted that its policy was
19  excess to the four Scottsdale policies but was also excess all of the "subcontractors'
20  policies  under which Sinanian qualifies as an "Additional Insured."  Admiral's
21  ROR further claimed that its "coverage is not triggered unless and until all such
22  coverage has been exhausted."
23      47.    On December 6, 2023, SDI's counsel responded to Admiral's
24  November 10, 2023 letter disputing Admiral's coverage position, explaining that
25  Admiral was turning a blind eye to California Supreme Court's opinion in *Montrose*
26  *III, supra,* and the opinion of California Court of Appeals opinion in *Diamond*
27  *Heights, supra.* SDI concluded its letter to Admiral as follows:
28          In light of the above, we are left to  conclude that Admiral

contends that: (1) it has no legal or contractual obligation to investigate GMPB's claim; (2) it has no obligation to evaluate GMPB's claim; (3) it has no duty to negotiate or to settle GMPB's claim; and (4) it will not take any further steps to protect SDI, absent "exhaustion" of all of the "controlling underlying insurance." If our conclusions are incorrect, we invite and expect Admiral's responses.

48. Admiral did not respond.

49. On December 8, 2023, Glendale Medical renewed its $11 Million settlement demand pursuant to California Code of Civil Procedure § 999 to expire on January 12, 2023. Again, Scottsdale's retained defense counsel immediately forwarded Glendale Medical's settlement demand to Admiral.

50. As of the filing of this action, Admiral continues to contend that (1) it has no legal or contractual obligation to investigate GMPB's claim; (2) it has no obligation to evaluate GMPB's claim; (3) it has no duty to negotiate or to settle GMPB's claim; and (4) it will not take any further steps to protect SDI, absent "exhaustion" of all of the "controlling underlying insurance."

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment re Admiral's "Other Insurance")**

51. SDI repeats and realleges paragraphs 1 through 50, above as though fully set forth herein.

52. An actual and justiciable controversy has arisen and presently exists between SDI, on the one hand, and Admiral, on the other hand, in that Admiral continues to contend that (1) it has no legal or contractual obligation to investigate GMPB's claim; (2) it has no obligation to evaluate GMPB's claim; (3) it has no duty to negotiate or to settle GMPB's claim; and (4) it will not take any further steps to protect SDI, absent "exhaustion" of all of the "controlling underlying insurance."

53. Admiral further contends that it is entitled to invoke and rely on its

policy's "Other Insurance" provision as grounds for asserting it has no duty to investigate and evaluate or otherwise consider Glendale Medical's $11 Million settlement demand until such time that SDI has exhausted not only Scottsdale's primary policy but also exhausted what Admiral asserts is available "Other Insurance" in the form of liability insurance issued to SDI subcontractors and under which SDI is additional insured; whereas SDI contends that Admiral's position on "horizontal exhaustion" of all "other insurance" is inconsistent with *Montrose III, supra*, and that Glendale Medical's Claim triggers and attaches to Admiral's policy limits.

54. A judicial determination is necessary and appropriate at this time in that Admiral's coverage positions have unlawfully injured and/or prejudiced and continues to unlawfully injure and prejudice SDI in its defense of Glendale Medical's Claim.

## SECOND CLAIM FOR RELIEF

(Declaratory Judgment re Duty to Settle

under the Implied Covenant of Good Faith and Fair)

55. SDI repeats and realleges paragraphs 1 through 54 above as though fully set forth herein.

56. The Admiral Policy contains an implied covenant of good faith and fair dealing which provides, among other things, that no party thereto will do anything to injure the rights of the other to receive the benefits of the Policy and prohibits Admiral from unreasonably exercising any right under the Policy and/or from withholding benefits provided by the Policy and/or from failing to give as much consideration to the interests of SDI as it gives to the consideration of its own interests.

57. SDI respectfully seeks a declaration that, among other things, defendant Admiral is legally obligated to do the following acts and things:

    a. As a duty implied in law from the broader duty of good faith and

           fair dealing, to avoid unreasonably exposing SDI to liability in excess of the policy limits of Scottsdale and Admiral;

           b.    As a duty implied in law from the broader duty of good faith and fair dealing, to settle in an appropriate case where it is reasonable to do so; and

           c.    To objectively, thoroughly and fairly investigate and evaluate the Glendale Medical Claim so that it can determine whether settlement demands are reasonable so as to requirement payment.

58.    Admiral has failed or refuses to conduct a fair, thorough and objective investigation of Glendale Medical's claim and settlement demand but rather has engaged a deliberate and purposeful misreading of the terms and provisions of its own Policy and by so acting or not acting Admiral is improperly placing its own interests in avoiding or reducing the payment of policy benefits above the interests of SDI in receiving the insurance benefits to which it is entitled under the Admiral policies.

59.    As a result, an actual and justiciable controversy has arisen and presently exists between SDI, on the one hand, and Admiral, on the other hand, is imminent and inevitable in that Admiral disputes that Admiral is subject to an implied duty of good faith and fair dealing which requires it to consider the interests of SDI equally with its own and evaluate settlement Glendale Medical's pending settlement proposal and/or future settlement proposals as though it alone carried the entire risk of loss and thus has an obligation to conduct good faith settlement negotiations sufficient to ascertain the most favorable terms available and make an informed evaluation of any settlement demand and to communicate its evaluation with its insured SDI.

60.    A judicial determination is necessary and appropriate at this time in that Admiral's failure to comply with its duties under the implied covenant of good faith and fair dealing has injured and/or prejudiced and continues to injure and prejudice

SDI in its defense of Glendale Medical's Claim.

## PRAYER FOR RELIEF

Wherefore, SDI prays for judgment as follows:

**On the First Claim for Declaratory Judgment**

1. For a declaration that under California law, Admiral's contentions that its excess policy is not triggered by Glendale Medical's claim because of Admiral's "other insurance" provision and alleged multiple occurrences is inconsistent under California law including but not limited to *Montrose III, supra.*

**On the Second Claim for Declaratory Judgment** (Declaratory Judgment re Duty to Settle under the Implied Covenant of Good Faith and Fair)

2. For a declaration that Admiral has an immediate duty to: (1) investigate Glendale Medical's Claim and settlement demands; (2) to evaluate Glendale Medical's Claim and related settlement demands; (3) to communicate its investigation and evaluation of Glendale Medical's Claim and settlement demands to SDI; and (4) based on Scottsdale's tender of its policy limits, that Admiral has a duty to negotiate and/or settle Glendale Medical's Claim without regard to its perceived coverage defenses.

3. For such other relief as the Court deems proper.

Respectfully submitted,

Dated: January 10, 2024         COLLINS | FORD, LLP

BY:   s/ Michael D. Collins
       Michael D. Collins
       Attorneys for Plaintiff
       Sinanian Development, Inc.